IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF GEORGIA
ATLANTA DIVISION

LIZ W. CHADWICK,

          Plaintiff,

v.

WOLTERS KLUWER UNITED
STATES INC.,

          Defendant

Case No. _____

## COMPLAINT

Plaintiff LIZ W. CHADWICK ("Plaintiff"), by and through counsel,
brings this action under the Age Discrimination in Employment Act of 1967,
as amended ("ADEA"), 29 U.S.C. § 621, *et seq*.; Title VII of the Civil Rights
Act of 1964, 42 U.S.C.§ 2000e, *et seq*., as amended ("Title VII"); and the Civil
Rights Act of 1991 against Defendant WOLTERS KLUWER UNITED
STATES INC. ("Defendant" or "Wolters Kluwer"), showing as follows:

## PARTIES, JURISDICATION, VENUE, &
## PROCEDURAL PREREQUISITES TO SUIT

1.

Plaintiff is a citizen of the United States and resides in Cobb County,
Georgia.  Plaintiff was born in 1962.  Plaintiff is a woman.

2.

Defendant is a New York corporation authorized and registered to do business in the State of Georgia and doing business in the State of Georgia, including the Northern District of Georgia.  Defendant's registered agent in the State of Georgia is C T Corporation System, and Defendant's registered address in the State of Georgia is 289 S Culver Street, Lawrenceville, Gwinnett County, Georgia 30046-4805, within the Atlanta Division of the Northern District of Georgia.  LR 3.1.A. and App. A, I NDGa.

3.

Defendant may be served with process through its registered agent in the State of Georgia.

4.

This Court has subject matter jurisdiction for the claims in this action under the ADEA, Title VII, and the Civil Rights Act of 1991 pursuant to 28 U.S.C.A. § 1331, 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 626(c).

5.

Defendant is subject to the personal jurisdiction of this Court.

6.

Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3), and LR 3.1.B. NDGa.

7.

Defendant is a corporation engaged in an industry affecting commerce which has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.  Defendant is an employer as defined by the ADEA.  29 U.S.C. § 630(b).  Defendant is an employer as defined by Title VII.  42 U.S.C. § 2000e(b).

8.

Plaintiff has satisfied all conditions precedent to jurisdiction and filing this action.  Plaintiff filed a Charge of Employment Discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting discrimination on the basis of age and sex within 180 days of the discriminatory acts forming the basis of Plaintiff's claims.  The EEOC issued Plaintiff Notice of Right to Sue (Issued upon Request) on March 9, 2022, a true and accurate copy of which is attached hereto as Exhibit A.  Plaintiff files this action within 90 days of her receipt of the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

### 9.

CCH Tax Accounting Software and Research ("CCH") hired Plaintiff in 1989 as a Sales Representative. In or about 1996, Defendant purchased CCH. Plaintiff continued her work as a Sales Representative for Defendant, working in Atlanta.

### 10.

Plaintiff received many awards within her division as well as company-wide awards, such as Honors Club, 100% Club, and Renewal 100% awards. Over the years, Defendant was recognized as a top representative and respected by management and peers.   Defendant was the primary contact person for the annual Tax Executives Institute Regional Meeting (covering Georgia, North Carolina, and South Carolina) for approximately 10 years (until 2016), bringing in over $500,000 in business year after year with retention contracts as well as new sales.

### 11.

In 2016, Defendant requested a change in position to Retention Tax Group to work with existing accounts to upsell and renew previous subscriptions, as she had secured over $1.9 million in accounts in past years and secured renewals, winning many awards for retaining over quota as well

as upselling accounts growing revenue. Defendant anticipated and requested that she cover Georgia, which was the territory she had been covering for years. In July 2016, Defendant offered Plaintiff the job in the Retention Group at a time Plaintiff was at 100% of quota in field sales. Defendant asked that Plaintiff remain in field sales until October 2016, at which time she would transfer to the Retention Group.  Plaintiff did not know it at the time, but her field sales manager was resigning in October, and Plaintiff's field sales manager needed Plaintiff to remain in the field sales position so she (Plaintiff's field sales manager) could meet her quota before resigning. Plaintiff was directed for the time period July through October 2016 to only work on accounts that were in Plaintiff's pending opportunities and to not start new opportunities which could not close before October of 2016.

12.

Plaintiff transferred to the Retention Group in October 2016, at which time she learned her territory would be parts of North Carolina, South Carolina, Texas, Louisiana, Mississippi, Alabama, and Tennessee that she had not worked previously, while someone in Minnesota was given the territory Plaintiff had covered in Georgia.

13.

Defendant assigned territories by zip code. Contracts which were in place for terms of over one year and were intended to be credited to the retention representative assigned the territory in which the customer was located. Despite Plaintiff servicing those accounts during the year, certain accounts in her assigned zip codes were allocated to another representative to prop up the other representative's numbers to Plaintiff's detriment. Had those contracts been included in Plaintiff's numbers, Plaintiff would have been over 100% of quota.

14.

Defendant formed a new Inside Sales Team in 2018 and assigned Plaintiff to it, telling her it was a better fit.  Plaintiff was excited for the challenge, but with the territory given, Plaintiff knew it was set up for failure. A tenured representative and a previous Manager and a previous Vice President stated that this was not a good idea -- to take territory away from field representatives to give to an inside sales team. Plaintiff's new territories were primarily rural territories only, which included rural Mississippi, rural Louisiana, rural Alabama, lower rural Arkansas, and rural Georgia as well as Cobb County, Georgia. Plaintiff's territory included what Forbes in 2018 designated the lowest income and most poverty-ridden states

out of 50 states (with the exception of Georgia). Plaintiff's colleagues were given more affluent territories. The manager of this new team left to go back to a prior group after 7 months of not making quota. No other team members made quota that year, and many were given other open territories as sales representatives left.

15.

In 2019, the Inside Sales Team had 3 employees that were left from 2018. Defendant hired 4 new sales representatives into the Inside Sales Team. Of those four, two male representatives were given territories that were open. These two males were not at quota. Defendant told Plaintiff that because Plaintiff was not at quota, Defendant was not granting Plaintiff a new territory.

16.

In May 2019 Defendant put Plaintiff on a verbal performance improvement plan. Rachel Corson, Plaintiff's supervisor, said Plaintiff needed improved numbers to be at 100% of quota at the end of each month and eventually year end. None of Plaintiff's peers were at quota, nor had they been for the prior two years, and Plaintiff did not have another territory to prop her numbers as did others, both men, one about 30 years old.  Plaintiff reported these circumstances to Human Resources.

17.

Plaintiff's new manager, Brian Taber, joined the Inside Sales Team in June 2019.  Mr. Taber reissued Plaintiff's performance plan to state Plaintiff had to be at 100% of quota each month by year end. No other Sales Representative had to abide by this rule or standard.

18.

Plaintiff became the number one sales representative over the other representatives with custodial territories for the short time she had one. These sales representatives did not meet their quota according to the Employer's CPM tool.

19.

In January 2020 Plaintiff attended a companywide 2020 Annual Kick Off Meeting in Dallas, Texas for training, to learn about new products and new company updates and information. At this meeting Plaintiff reported the disproportionate sales territory assignments to the Vice President of Sales. At this meeting Plaintiff was acknowledged for being a top sales representative selling books for a contest. While receiving the award, Plaintiff learned she was to receive another award for another learning contest by the Learning Center Manager. Although recognized, Plaintiff never received the gift card award.

20.

Rachel Corson, while Ms. Chadwick's supervisor, referred to Plaintiff as an "old dinosaur". She referred to Plaintiff as having been with Defendant for so long that the job turned in to her social life. She commented "Liz has been here 100 years; she knows everyone." As relayed to Plaintiff by a colleague, Ms. Corson commented that Plaintiff was so old she could not figure out Excel.

21.

While the Inside Sales manager in 2019, Brian Taber made comments and engaged in conduct reflecting a bias against Ms. Chadwick because of her age and tenure.

a.     Mr. Taber stated on a conference call that a co-employee was 2 years old when Ms. Chadwick started at CCH/WK. To further the point, he asked words to the effect: "Liz, I think [male employee] was 2 when you started at CCH/WK. Right, [male employee]?"

b.     Mr. Taber mentioned to a male employee in the presence of several team members in the Dallas office that only older people drink Fireball shots. On a conference call shortly thereafter, Mr. Taber brought up drinks, and during light conversation Plaintiff mentioned that she likes Fireball. Mr.

Taber then replied and said "See [male employee], I told you only older people drink Fireball."

c.    Mr. Taber called Plaintiff, who was working from home, to discuss deals in the works for the week.  He asked Plaintiff during the phone call if she was "watching the Golden Girls".

d.    If a female took a day off, Mr. Taber stated or implied the girls must be out shopping.

e.    Mr. Taber joked with others on the team at Plaintiff's expense and called on the other, younger team members rather than Plaintiff and would talk over Plaintiff on calls.

22.

In January 2020, Defendant terminated the employment of a male employee residing in Chicago, Illinois, who is about the same age as Plaintiff. The male employee had not met quota for the previous two years. When he was terminated, Defendant offered the male employee a severance package.

23.

On February 4th, 2020 on a call with Brian Taber and Erin Houlette, a human resources representative, Plaintiff was notified that she was no longer employed. Defendant offered Plaintiff no severance package.

24.

Plaintiff had no opportunity to appeal the termination.

25.

Plaintiff believes that her termination was the result of discrimination
on the basis of age or sex or both.

26.

There exists no legitimate non-discriminatory reason for Defendant's
termination of Plaintiff's Employment.

27.

At the time of Defendant's termination of Plaintiff's employment,
Plaintiff's pay included a base salary of $55,000.00 plus commissions on new
sales.

28.

Defendant's termination of Plaintiff's employment also resulted in a
deprivation in the amount of 401k contributions that Plaintiff could have
received for 2019 and for the next ten years minimum Plaintiff intended to
remain in employment with Defendant.

29.

Plaintiff secured new employment beginning approximately April 2021.
While Plaintiff is grateful for and values her new employment, Plaintiff's

current compensation and benefits under her new employment are significantly below Plaintiff's compensation while employed by Defendant.

30.

Plaintiff has been unable to secure new employment with compensation and benefits similar to or exceeding the compensation and benefits she received immediately prior to Defendant's termination of her employment.

## COUNT ONE

## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

31.

Plaintiff incorporates by reference paragraphs 1 through 30 of this Complaint as if set forth herein verbatim.

32.

Plaintiff was 57 years of age at the time Defendant terminated her employment.  She was in a protected class under the ADEA.

33.

Defendant terminated Plaintiff's employment.

34.

Plaintiff was well qualified for her job.

35.

Defendant replaced Plaintiff with a person substantially younger than Plaintiff.

36.

Defendant terminated Plaintiff's employment because of Plaintiff's age.

37.

Defendant has treated employees younger than Plaintiff differently and better than it treated Plaintiff in similar circumstances.

38.

Defendant held Plaintiff to a higher standard in the terms and conditions of her employment than similarly-situated younger employees of Defendant.

39.

Defendant disciplined Plaintiff, terminating her employment, in a manner and degree Defendant has not applied to similarly-situated younger employees.

40.

Defendant's termination of Plaintiff's employment constitutes discrimination on the basis of age in violation of the ADEA.

41.

Any purported legitimate, non-discriminatory reasons Defendant proffers for terminating Plaintiff's employment are pretext for discriminating against Plaintiff based upon her age.

42.

Defendant's acts and omissions culminating in termination of Plaintiff's employment constitute unlawful and willful discrimination against Plaintiff based upon her age in violation of the ADEA.

43.

Defendant's acts and omissions culminating in termination of Plaintiff's employment constitute unlawful disparate treatment of Plaintiff because of her age.

44.

Defendant has engaged in a pattern and practice of discriminating against employees age 40 and over because of their age.

45.

As a result of Defendant's discriminatory practices, Plaintiff and other similarly-situated employees have been damaged; deprived of employment, promotion, raises, compensation, and other terms and conditions of

employment; and disciplined more severely than younger employees engaging in similar or more egregious conduct.

46.

As the proximate result of Defendant terminating Plaintiff's employment on the basis of her age, Plaintiff has sustained losses of salary, commissions, bonuses, income, benefits, and promotional opportunities.

47.

Plaintiff is entitled to reinstatement of her employment with Defendant and recovery from Defendant of all back pay and benefits, raises, and promotions she would have earned but for Defendant's unlawful termination of her employment.

48.

Absent reinstatement, Defendant is liable to Plaintiff for back pay and benefits and front pay and benefits she has lost as the proximate result of Defendant discriminating against her on the basis of age in amounts to be proven at trial.

49.

Defendant's conduct as stated in this Complaint shows that Defendant willfully violated the ADEA.  Defendant knew that its conduct violated the ADEA.  Defendant's conduct shows reckless disregard for Plaintiff's rights

15

under the ADEA.  Plaintiff is entitled to recover from Defendant liquidated

damages in an amount equal to back pay.

50.

Plaintiff is entitled to recover her costs and expenses of litigation,

including attorney's fees, arising from Defendant discriminating against her

on the basis of age as provided by the ADEA.

## COUNT TWO

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND

## THE CIVIL RIGHTS ACT OF 1991

51.

Plaintiff incorporates by reference paragraphs 1 through 50 of this

Complaint as if set forth herein verbatim.

52.

Defendant terminated Plaintiff's employment because of Plaintiff's sex.

53.

Defendant has not terminated male employees whose performance level

is similar to or worse than Plaintiff's performance level.

54.

Defendant held Plaintiff to a higher standard in the terms and conditions of her employment than similarly-situated male employees of Defendant.

55.

Defendant placed quota requirements on Plaintiff in a manner and degree Defendant has not applied to similarly-situated male employees.

56.

Defendant disciplined Plaintiff, resulting in termination of her employment, in a manner and degree Defendant has not applied to similarly-situated male employees.

57.

Defendant's termination of Plaintiff's employment constitutes discrimination on the basis of sex in violation of Title VII.

58.

Any purported legitimate, non-discriminatory reasons Defendant proffers for terminating Plaintiff's employment are pretext for discriminating against Plaintiff based upon her sex.

59.

Defendant's acts and omissions culminating in termination of Plaintiff's employment constitute unlawful and willful discrimination against Plaintiff based upon her sex in violation of Title VII.

60.

Defendant's acts and omissions culminating in termination of Plaintiff's employment constitute unlawful disparate treatment of Plaintiff because of her sex.

61.

Defendant has engaged in a pattern and practice of discriminating against women employees because of their sex.

62.

As a result of Defendant's discriminatory practices, Plaintiff and other female employees have been damaged; deprived of employment, promotion, raises, compensation, and other terms and conditions of employment; and disciplined more severely than male employees engaging in similar or more egregious conduct.

63.

As the proximate result of Defendant terminating Plaintiff's employment on the basis of her sex, Plaintiff has sustained losses of salary, commissions, bonuses, income, benefits, and promotional opportunities.

64.

As the proximate result of Defendant terminating Plaintiff's employment on the basis of her sex, Plaintiff has suffered emotional distress, pain, and suffering.

65.

Defendant is liable to Plaintiff for back pay and benefits and front pay and benefits she has lost as the proximate result of Defendant discriminating against her on the basis of sex in amounts to be proven at trial.

66.

Defendant's conduct as stated in this Complaint constitutes disparate treatment and shows that Defendant intentionally and willfully violated Title VII.  Defendant knew that its conduct violated the Title VII.  Defendant's conduct shows malice or reckless disregard for Plaintiff's rights under Title VII.

67.

Plaintiff is entitled to recover from Defendant compensatory damages in amounts to be proven at trial pursuant under Title VII and the Civil Rights Act of 1991.

68.

Defendant is liable to Plaintiff for Plaintiff's emotional distress, pain, and suffering arising from Defendant discriminating against her on the basis of sex in an amount to be determined by the enlightened conscious of a fair and impartial jury.

69.

Plaintiff is entitled to recover from Defendant punitive damages in an amount sufficient to penalize, punish, and deter Defendant as provided by Title VII and the Civil Rights Act of 1991.

70.

Plaintiff is entitled to recover her costs and expenses of litigation, including attorney's fees, arising from Defendant discriminating against her on the basis of sex as provided by Title VII, the Civil Rights Act of 1991, and 42 U.S.C. § 1988.

## JURY DEMAND

Plaintiff demands trial by jury to all issues so triable in this action.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

(1)    Grant trial by jury;

(2)    Enter judgment in favor of Plaintiff and against Defendant for:

      a.    Back pay and benefits,

      b.    Front pay and benefits,

      c.    Damages for Plaintiff's emotional distress,

      e.    Compensatory damages in an amount to be proven at trial,

      f.    Liquidated damages under the ADEA,

      g.    Punitive damages under Title VII and the Civil Rights Act of 1991, and

      h.    Plaintiff's costs and expenses of litigation, including attorney's fees;

(3)    Order that Defendant reinstate Plaintiff's employment with all promotions, raises, and benefits she would have received or to which she would have been entitled had Defendant not engaged in unlawful employment discrimination and enter judgment in favor of Plaintiff and against Defendant for all back pay and benefit, losses, and damages she incurred during the period beginning with Defendant's termination of Plaintiff's employment through reinstatement;

21

(4)     Grant Plaintiff all relief to which this Court finds her entitled under

the ADEA, Title VII, the Civil Rights Act of 1991, and other applicable law;

and

(5)     Grant Plaintiff such further relief as this Court deems just and proper.

This 7th day of June, 2022.

> **SMITH, GILLIAM, WILLIAMS & MILES, P.A.**
> Attorneys for Plaintiff
>
> By:     */s/ M. Tyler Smith*
> M. Tyler Smith
> Georgia Bar No. 661685

P.O. Box 1098
Gainesville, Georgia 30503-1098
(770) 536-3381
tsmith@sgwmfirm.com

<u>CERTIFICATE OF FONT SIZE</u>

The undersigned counsel for Plaintiff certifies that this Complaint is

prepared in Century Schoolbook font, 13 point.

This 7th day of June, 2022.

> **SMITH, GILLIAM, WILLIAMS & MILES, P.A.**
> Attorneys for Plaintiff
>
> By:     */s/ M. Tyler Smith*
> M. Tyler Smith
> Georgia Bar No. 661685

22